IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:18 cv 231

| | |
|---|---|
| MICHAEL MUSSELWHITE., WHITESHIRE FOODS, INC., LELAND-HWY 17, INC., SHALLOTTE - HWY 17, INC., WILMINGTON-17TH STREET, INC., AND ALL THOSE SIMILARLY SITUATED<br><br>Plaintiffs,<br><br>v.<br><br>MID-ATLANTIC RESTAURANT CORPORATION, CARY KEISLER, INC., S.C.N.B., INC.,  GREGORY MOORE, in his individual and official capacity as Owner and Officer of Mid-Atlantic Restaurant Corporation and Smithfield Management Corporation, SMITHFIELD'S OF SMITHFIELD, INC., SMITHFIELD'S OF CLAYTON, INC., DAVID HARRIS, in his individual and official capacity as an Officer of Mid-Atlantic Restaurant Corporation and Smithfield Management Corporation, L. BRIAN CHESHIRE, FLAMINGO SOUTH LLC AND FLAMINGO PROPERTIES LLC<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **COMPLAINT** |

NOW COME the Plaintiffs, complaining of the Defendants, and alleges and says:

## NATURE OF THE CASE

This is an action seeking damages by Plaintiffs and all those similarly situated against Defendants for a plethora of egregious violations of the statutory and common law of North Carolina. In addition, Plaintiffs also allege several violations of federal statutory law.

To wit, Plaintiffs seek legal redress based upon North Carolina law pursuant to the following claims: Breach of Contract; Breach of Fiduciary Duty; Breach of the Implied

1

Covenant of Good Faith and Fair Dealing; Fraud; Constructive Fraud; Unjust Enrichment; Negligent Misrepresentation; Violation of the North Carolina Unfair and Deceptive Trade Practices Act, codified at N.C.G.S. §75-1.1, *et seq*.; Violation of North Carolina Racketeer Influenced and Corrupt Organization Act ("North Carolina Civil RICO"), codified at N.C.G.S. §75D-1, *et seq.*; Civil Conspiracy; Negligent Infliction of Emotional Distress; and the Intentional Infliction of Emotional Distress.

In addition, Plaintiff also brings forth several violations of federal law, to wit: Violation of the Federal Racketeer Influenced and Corrupt Organization Act ("Federal Civil RICO"), codified at 18 U.S.C. §1961, *et seq.*, and Violations of the Sherman Antitrust Act (Sections 1 and 2), codified at 15 U.S.C. §1, *et seq.*, and the Clayton Act (Section 3), codified at 15 U.S.C. §12, *et seq.*

## PARTIES AND JURISDICTION

1. Plaintiff Michael Musselwhite ("Plaintiff Musselwhite") is a citizen and resident of New Hanover County, North Carolina.

2. Plaintiff Whiteshire Foods, Inc., at the times relevant to this Complaint, was a domestic corporation organized under the laws of the State of North Carolina. Plaintiff Whiteshire Foods, Inc.'s principal office was located in New Hanover County, North Carolina.

3. Plaintiff Leland-Hwy 17, Inc., at the times relevant to this Complaint, was a domestic corporation organized under the laws of the State of North Carolina. Plaintiff Leland-Hwy 17, Inc.'s principal office was located in New Hanover County, North Carolina.

4. Plaintiff Shallotte – Hwy 17, Inc., at the times relevant to this Complaint, was a domestic corporation organized under the laws of the State of North Carolina. Plaintiff Shallotte – Hwy 17, Inc.'s principal office was located in New Hanover County, North Carolina.

5. Plaintiff Wilmington-17th Street, Inc., at the times relevant to this Complaint, was a domestic corporation organized under the laws of the State of North Carolina. Plaintiff Wilmington-17th Street, Inc.'s principal office was located in New Hanover County, North Carolina.

6. Defendant Mid-Atlantic Restaurant Corporation ("Mid-Atlantic") is a domestic corporation organized under the laws of the State of North Carolina. Defendant Mid-Atlantic's principal office is located in Wake County, North Carolina.

7. Defendant Cary Keisler, Inc. ("Smithfield Management"), formerly known as Smithfield Development Corporation and Smithfield Management Corporation, is a domestic corporation organized under the laws of the State of North Carolina. Defendant Smithfield Management's principal office is located in Wake County, North Carolina.

8. Defendant Smithfield's of Smithfield, Inc. ("Smithfield's of Smithfield"), is a domestic corporation organized under the laws of the State of North Carolina. Defendant Smithfield's of Smithfield's principal office is located in Johnston County, North Carolina.

9. Defendant Smithfield's of Clayton, Inc. ("Smithfield's of Clayton"), is a domestic corporation organized under the laws of the State of North Carolina. Defendant Smithfield's of Clayton's principal office is located in Johnston County, North Carolina.

10. Defendant Flamingo South, LLC ("Flamingo South"), is a domestic corporation organized under the laws of the State of North Carolina. Defendant Flamingo South's principal office is located in New Hanover County, North Carolina.

11. Defendant Flamingo Properties, LLC ("Flamingo Properties"), is a domestic corporation organized under the laws of the State of North Carolina. Defendant Flamingo Properties's principal office is located in New Hanover County, North Carolina.

3

12. Upon information and belief, Defendant Greg Moore ("Defendant Moore") is a citizen and resident of Johnston County, North Carolina.

13. Upon information and belief, Defendant David Harris ("Defendant Harris") is a citizen and resident of Johnston County, North Carolina.

14. Upon information and belief, Defendant L. Brian Chesire ("Defendant Cheshire") is a citizen and resident of New Hanover County, North Carolina.

15. Jurisdiction in this Court is appropriate pursuant to 28 U.S.C. §§1331 and §1337, 18 U.S.C. §1964(a) and (c), and 15 U.S.C. §15(a). As to plaintiff's claims that are grounded in state law, this court may exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

16. Venue is proper pursuant to 28 U.S.C. §1391(b) because, upon information and belief, all Defendants reside in the Eastern District of North Carolina.

## FACTUAL ALLEGATIONS

### I. The Beginning

17. In 1977, Maggie and her belated husband, Junius Moore ("Junius"), opened the first Smithfield Barbecue restaurant in Smithfield, North Carolina. The original restaurant was owned and operated by Smithfield Barbecue, Inc.

18. Initially, Smithfield Barbecue, Inc. was owned equally by Maggie and Junius.

19. In 1979, a second Smithfield Barbecue restaurant was opened in Clayton, North Carolina. This restaurant was owned and operated by Moore and Johnson, Inc., a North Carolina corporation that was Fifty Percent (50%) owned by Maggie and Junius and Fifty Percent (50%) owned by Norman Johnson and Glenda Johnson.

20. As part of the business arrangement for the Smithfield Barbecue restaurant in Clayton, Moore and Johnson, Inc. entered into a franchise agreement with Smithfield Barbecue, Inc. This

4

agreement gave the Clayton restaurant access to the recipes, logos, and other concepts associated with the original Smithfield Barbecue restaurant in Smithfield.

21. In 1981, a third Smithfield Barbecue restaurant was opened in Indian Beach, North Carolina. The land for this restaurant was purchased by Maggie and Junius but was titled to Maggie, Junius, Defendant Moore, and Defendant Moore's then wife, Julia Moore ("Julia").

22. Shortly after opening the Indian Beach restaurant, Maggie and Junius gave Defendant Moore the opportunity to operate the restaurant. Defendant Moore agreed and, at some time in 1982, Defendant Moore and Julia purchased Maggie and Junius' interest in the Indian Beach restaurant and the land on which it was located.

23. Defendant Moore and Julia effectuated this purchase by executing a promissory note in the amount of Ninety-Five Thousand Dollars ($95,000.00), payable to Maggie. To date, no payments have been made on this promissory note and it remains wholly unsatisfied.

24. In October of 1982, Junius passed away. After Junius' death, Maggie became the sole shareholder of Smithfield Barbecue, Inc.

25. In 1983, Defendant Moore opened a Smithfield's Chicken 'N Bar-B-Q restaurant in Gum Branch, North Carolina.

26. In 1985, Defendant Moore commenced a pattern and practice of unscrupulous business practices that persists to this date, and forced his mother, Maggie, out of her Smithfield Barbecue locations in Smithfield and Clayton, ostensibly by threatening her and making misrepresentations in an effort to fraudulently gain control over the Smithfield Barbecue locations.

27. As a result of these abusive tactics, Defendant Moore, by and through corporations owned by him, forced his mother Maggie to grant him a lease for the restaurants owned by Smithfield Barbecue, Inc. (i.e. the restaurants in Smithfield and Clayton) and began operating those

5

restaurants.

*II. The Trademarks*

28. At some time after 1985, Defendant Moore, by and through Smithfield Management, and without the knowledge nor consent of Maggie, as the sole shareholder of Smithfield Barbeque, Inc., registered the trademark for "Smithfield's Chicken 'N Bar-B-Q" with the United States Patent and Trademark Office.

29. In March of 1990, Smithfield Foods, Inc., Gwaltney of Smithfield, Ltd., and the Packing Company Incorporated filed a petition to cancel the registration of this trademark.

30. Pursuant to this petition, Defendant Moore and Smithfield Foods, Inc. negotiated a settlement that granted Defendant Moore the right to utilize up to fifty (50) licenses of the Smithfield's Chicken 'N Bar-B-Q trademark in the state of North Carolina without paying any royalties, licensing fees or other related expenses. In exchange, Defendant Moore was required to assign his interest in this trademark and all other related trademarks to Smithfield Foods, Inc.

31. Upon information and belief, Defendant Moore made numerous misrepresentations to Smithfield Foods, Inc. during the negotiation of the aforementioned settlement, including statements about prior use of the Smithfield Chicken 'N Bar-B-Q and related trademarks and the history of ownership of the associated restaurants.

32. Pursuant to this agreement, Defendant Moore is required to maintain a level of quality control relative to the image, use, and reputation of the trademarks.

33. Upon information and belief, since the time Defendant Moore acquired the licenses, he has utilized thirteen (13) of the licenses for corporate or personal stores and franchised twenty-two (22) of the licenses.

*III. The Franchises*

34. Prior to the events contained herein transpiring, Plaintiff Musselwhite and Defendant Cheshire have been lifelong friends and have known each other since their youth.

35. In November 1994, Plaintiff Musselwhite began working with Smithfield Restaurants and was a general manager at a Smithfield's company owned store located at 7300 Market Street in Wilmington, North Carolina from approximately 1995 until 2000.

36. Due to Plaintiff Musselwhite's efforts and managerial expertise, Smithfield sold Plaintiff Musselwhite a twenty percent (20%) interest in the 7300 Market Street restaurant in 1997.

37. In 1999 Smithfield sold Plaintiff Musselwhite an additional 10% in the 7300 Market Street restaurant.

38. From November 1994 to February 2000, Defendant Cheshire was employed with the State of North Carolina and owned substantial properties.

39. In early 2000, discussions began between Plaintiff Musselwhite and Defendant Cheshire about purchasing the Smithfield Restaurant located at 7300 Market Street.

40. At that time, Plaintiff Musselwhite and Defendant Cheshire decided to enter into a joint venture with each other for the purpose of owning the real estate located at 7300 Market Street, the site of the Smithfield's restaurant.

41. On or about February 17, 2000, Plaintiff Musselwhite and Defendant Cheshire formed Flamingo Properties for the purpose of purchasing the land at 7300 Market Street and operating the restaurant.

42. Plaintiff Musselwhite and Defendant Cheshire were the sole members of Flamingo Properties, each with a 50% interest. After finaling the operating agreement, the property located at 7300 Market Street was purchased by Plaintiff Musselwhite and Defendant Cheshire in April 2000.

7

43. In April 2000, Plaintiff Musselwhite and Defendant Cheshire took over the Smithfield's located at 7300 as franchisees.

44. Simultaneous with the formation of Flamingo Properties, Plaintiff Musselwhite and Defendant Cheshire also formed Whiteshire Foods for the purpose of operating the Smithfield's Restaurant.

45. The Market Street property was purchased by Flamingo Properties for $1,250,000.00. Plaintiff Musselwhite began handling the operation of the restaurant. During this period of time Plaintiff Musselwhite performed most of the day-to-day operational duties with regard to all of the abovementioned corporations. This included the actual day-to-day operation of the Smithfield Restaurant including, but not limited to, hiring staff, managing employees, operating the restaurant and all other duties connected to the operation of a successful restaurant.

46. The restaurant became increasingly successful under the direction and supervision of Plaintiff Musselwhite.

47. In October 2003, Plaintiff Musselwhite and Defendant Cheshire, by and through Flamingo Properties, purchased a second Smithfield site located at 3705 Patriot Way, Wilmington, North Carolina, for approximately $1,500,000.00. This purchase began a second operation of a Smithfield's Restaurant.

48. Plaintiff Musselwhite continued managing and supervising the day-to-day operation of both restaurants. Eventually, Defendant Cheshire quit his job with the state of North Carolina and began to involve himself more with the entities listed above.

49. In September 2007, Plaintiff Musselwhite and Defendant Cheshire formed Flamingo South and purchased property on Old Regent Way, Leland, North Carolina, for the purpose of operating a third Smithfield Restaurant. Plaintiff Musselwhite and Defendant Cheshire had equal ownership in Flamingo South.

8

50. Around this time, Plaintiff Musselwhite and Defendant Cheshire also renovated the Smithfield's Restaurant located on Market Street to improve the facility. Flamingo Properties obligated itself to loans from BB&T in the approximate amount of $650,000.00 for the purpose of renovating the restaurant.

51. In January 2009, the Old Regent Way Smithfield's Restaurant in Leland began operation.

52. In early 2013, Plaintiff Musselwhite and Defendant Cheshire purchased property though Flamingo South in Shallotte with the expectation that a fourth Smithfield's restaurant would be erected at that location.

53. In April 2014, a fourth Smithfield's restaurant opened in Shallotte.

54. Plaintiff Musselwhite and Defendant Cheshire continued the operation of all four businesses. The two Wilmington locations, on Market Street and Patriot Way, were operated under Flamingo Properties and the Leland and Shallotte restaurants were owned and/or operated under Flamingo South.

55. Plaintiff Musselwhite continued to manage and supervise the day to day operations, and Defendant Cheshire continued his role in managing the finances of all four businesses. Plaintiff Musselwhite and Defendant Cheshire were 50-50 owners in both businesses.

56. In early 2015, David Harris (hereinafter "Harris"), an executive with Cary Keisler, Inc., approached Plaintiff Musselwhite and indicated that the oldest son of the owners of Smithfield Foods—Junius Moore ("Junius")—wanted to begin operating the Leland and Shallotte Restaurants.

57. Junius was to operate the Leland and Shallotte restaurants with a lease agreement to Flamingo South.

9

58. The lease agreement would provide that Junius (new franchisee) would pay Flamingo South considerable rent for a period of seven years culminating with a substantial buyout at the end of the seven years.

59. On or about March 1, 2015, the transaction setting forth the contractual obligations listed above was consummated between the parties and memorialized in a contract.

60. The terms of the agreement obligated Plaintiff Musselwhite and Defendant Cheshire to pay the mortgage payments on both properties, however, the restaurants were so profitable that Plaintiff Musselwhite and Defendant Cheshire would realize a substantial profit on a monthly basis.

61. At the end of the seven-year period of time, Plaintiff Musselwhite and Defendant Cheshire were to receive a payout based on the cash flow of the restaurant over a fixed period of time.

62. During the spring of 2015, the parties were again approached by Cary Keisler, Inc., by and through Defendant Harris, and agreed that by August 2015, Cary Keisler Inc., or another affiliated entity, would take over the operation of the two remaining restaurants on Market Street and Patriot Way located in New Hanover County.

63. Per the agreement, beginning August 1, 2015, Smithfield Foods would take over the restaurant operation, and the restaurants would rent the property from Flamingo Properties.

64. This agreement would also allow Plaintiff Musselwhite and Defendant Cheshire the ability to pay down the monthly mortgage payments and receive a substantial income on a monthly basis until there was a buyout at the end of a seven-year period.

65. This agreement was very similar to the contracts signed by Plaintiff Musselwhite and Defendant Cheshire on behalf of Flamingo South for the Leland and Shallotte restaurants.

66. Up until this point, Defendant Cheshire had never had any direct conversations with the management of any entity that negotiated agreements with Flamingo South and/or Flamingo Properties.

67. Furthermore, Defendant Cheshire did not have any conversations with Harris, as Plaintiff Musselwhite was the point of contact and the partner who negotiated on behalf of Flamingo South.

68. On or about May 21, 2015, Defendant Cheshire indicated to Plaintiff Musselwhite that Harris was insisting that Plaintiff Musselwhite have no ownership interest in the respective properties if they were going to continue to operate the Smithfield Restaurants.

69. Approximately sixty (60 days) after the contract between Cary Keisler Inc., and Flamingo South was executed, Harris visited the restaurant sites in New Hanover County, and in particular, the property located at 7300 Market Street.

70. During his visit, Harris began criticizing and disparaging Plaintiff Musselwhite's operation of the restaurant without merit.

71. On May 23, 2015, Harris physically barred Plaintiff Musselwhite from the Market Street restaurant.

72. Within a few days of Harris visiting the restaurants, he sent correspondence to Plaintiff Musselwhite and Defendant Cheshire indicating that Harris was threatening to close the New Hanover County franchises and take them over without compensation or remuneration of Plaintiff Musselwhite and Defendant Cheshire as owners of the land and restaurants.

73. As justification for this threat, Harris complained that Plaintiff Musselwhite was doing a poor job managing the restaurants.

74. At this point, all information that Plaintiff Musselwhite received was communicated to him through Defendant Cheshire. For the first time in the history of their partnership, Defendant Cheshire began discussing operations directly with Harris and/or executives at Cary Keisler, Inc.

75. Defendant Cheshire told Plaintiff Musselwhite that it would be necessary to quickly divest him of his interest in Flamingo Properties and Flamingo South "on paper" or Harris and/or Cary Keisler Inc. was going to shut down the restaurants and Defendant Cheshire and Plaintiff Musselwhite would receive "nothing."

76. Defendant Cheshire indicated that he did not have sufficient funds to "buyout" Plaintiff Musselwhite for the substantial sums the properties would bring to the two parties during the years and asked Plaintiff Musselwhite what amount of income he could live on. Defendant Cheshire told Plaintiff Musselwhite "we just have to get something down on paper to show that you [Plaintiff Musselwhite] are out."

77. On or about May 29, 2015, at the insistence of Defendant Cheshire, and based on the indications that Harris and Cary Keisler Inc. would no longer deal with Plaintiff Musselwhite, Plaintiff Musselwhite and Defendant Cheshire executed an assignment of membership interest for Flamingo South and Flamingo Properties. This action was also based on representations by Defendant Cheshire that he would continue to regard Plaintiff Musselwhite as an equal (50-50) partner.

78. In reliance on Defendant Cheshire's representations, Plaintiff Musselwhite transferred his 50% membership interest of Flamingo South and Flamingo Properties to Defendant Cheshire.

79. Plaintiff Musselwhite informed Defendant Cheshire that he needed $6,250,00 per month to meet his expenses. That resulted in a total payoff of $375,000.00.

12

80. The promissory note and the transfer of interest were drawn up simply for the purpose of satisfying the demands of Harris and Cary Keisler Inc.

81. On the date the documents were signed, Plaintiff Musselwhite also signed letters that Defendant Cheshire was to submit to Smithfield Foods indicating he was no longer a member of the company and would tender his resignation as manager effective on that same date.

82. All of these actions took place in a time period of less than seventy-two (72) hours.

83. Until this period of time and just prior to the proposed leaseback and buyout contract previously mentioned that was to occur on August l, 2015, Plaintiff Musselwhite had operated the restaurants in an exemplary manner, kept them profitable for all years of operation, and had effectively made the restaurants a valuable asset of Plaintiff Musselwhite, Defendant Cheshire, and their corporations.

84. At all times, Defendant Cheshire represented to Plaintiff Musselwhite that the documents he had Plaintiff Musselwhite execute were simply for the purpose of satisfying Smithfield Foods. Prior to the execution of the documents, Defendant Cheshire indicated that he would resume his relationship with Plaintiff Musselwhite after "things settled down" and would pay him the full amounts due to him under the previous agreements reached between Plaintiff Musselwhite, Defendant Cheshire and Smithfield Foods.

85. The promissory note of $375,000.00 that is allegedly to be paid is approximately one-tenth of the value of Plaintiff Musselwhite's interest in Flamingo South and Flamingo Properties, LLC.

86. Upon information and belief, Defendant Cheshire had no intention of resuming business with Plaintiff Musselwhite, and induced Plaintiff Musselwhite to assign his interests to him in furtherance of agreement made with Defendant Harris on behalf of Cary Keisler Inc., or another affiliated entity.

13

## V. Harassment and Inequitable Treatment

87. In early 2015, Plaintiff Musselwhite had been subjected to continuous intentional harassment and intimidation as well as discrimination and inequality in the way his franchises were supervised.

88. On or about May 23, 2015, Plaintiff Musselwhite had a face to face meeting with Defendant Harris at the Ogden store.

89. Defendant Harris is a man of physically imposing stature. Standing approximately six feet five inches and weighing in excess of three hundred pounds.

90. Additionally, Defendant Harris routinely open carries a handgun holstered on his hip.

91. Defendant Harris uses his physical stature and displays of threatening body language to intimidate franchisees.

92. During this short meeting on May 23, 2015, Defendant Harris was belligerent and directed name calling and profanity at Plaintiff Musselwhite.

93. Defendant Harris falsely accused Plaintiff Musselwhite of running the restaurants into the ground and improperly operating them.

94. Defendant Harris told Plaintiff Musselwhite, "To get the f**k out of the restaurant."

95. Defendant Harris ordered Plaintiff Musselwhite out of the restaurant, and threatened to shut down the restaurant if Plaintiff Musselwhite did not leave the premises immediately.

96. Furthermore, Defendant Harris directed Plaintiff Musselwhite to never speak to him or any other individuals representing Defendant Cary Keisler or Defendant Mid-Atlantic ever again.

97. In the week prior to Plaintiff Musselwhite being kicked out of the Ogden restaurant, Defendant Harris had multiple telephone conversations with Defendant Cheshire.

98. Upon information and belief, Defendant Harris and Defendant Cheshire conspired to remove Plaintiff Musselwhite from the business.

14

99. More specifically, Defendant Harris and Defendant Cheshire conspired to induce Plaintiff Musselwhite to assign his interests in Flamingo South and Flamingo Properties to Defendant Cheshire and then renegotiate lease terms and buyout options that would be more favorable to Defendant Mid-Atlantic, and/or other affiliated entities, Defendant Harris, and Defendant Cheshire.

100. Upon information and belief, to effectuate removing Plaintiff Musselwhite from the business Defendant Harris made numerous false representations about the condition of the Ogden restaurant to Defendant Mid-Atlantic's legal counsel.

101. These false representations formed the content of a letter dated May 26, 2016, sent by the law firm DLA Piper to Whiteshire Foods terminating its franchise agreement.

102. On or about May 27, 2015, Plaintiff Musselwhite received the May 26, 2015, letter from DLA Piper's Chicago office.

103. DLA Piper's letter represented, "We send you this letter because MARC has advised us that the restaurant's operations and physical conditions are in an absolutely deplorable state, presenting an immediate, material health and safety hazards to its customers and the public and devastating the goodwill associated with the Smithfield's Chicken 'N BBQ brand (and the value of the property at which the Restaurant is located)."

104. More specifically, those misrepresentations included—but are not limited to—the following:

    a. That mold was growing in the food buckets stored in the walk-in cooler;

    b. Prepared food was allowed to sit at room temperature for two to three hours before being refrigerated;

    c. Raw chicken was held at seventy-four degrees;

d. Chicken sat in the sink without ice for extended periods of time;

e. Employees used the same gloves to pull and pick pork as they used to clean dishes;

f. Sanitation water was not properly prepared;

g. Using leftover stew with freezer burn;

h. Storing chemicals over food products;

i. Food stored in filthy containers;

j. Sanitizing buckets not cleaned and refilled with towels for cleaning;

k. Employees wearing dirty aprons and using dirty towels to clean;

l. Not using proper dish procedures when cleaning pots and pans;

m. Fryers and pig cookers not properly cleaned with resulting residue build-up,

n. No usable drains in the restaurant;

o. Insects in lighting;

p. Storing Chemicals on the floor; and

q. Using food containers for chemicals and cleaning buckets.

105. During the May 23, 2015, meeting Defendant Harris had with Plaintiff Musselwhite, there was no mention of the above items.

106. The items detailed in DLA Piper's letter were generally without merit and were part of an on-going effort to defraud Plaintiff Musselwhite, as a franchise owner, of rightfully earned profits.

107. Upon information and belief, this continuous pattern of activity was and remains part of a scheme to defraud and damage the Plaintiff and similarly situated franchisees of financial

16

resources such that they are limited in their ability to contest otherwise fraudulent, deceptive, discriminatory and threatening conduct. Furthermore, this scheme is intended to extract value for the Defendants at the expense of the Plaintiff and similarly situated franchisees.

108.     The tactics engaged in by Defendant Mid-Atlantic were intended to intimidate, suppress, and marginalize Plaintiff Musselwhite, as a franchise owner, such that he was fearful of addressing the wrongs being perpetrated against him.

109.     Upon information and belief, the demands placed on franchise owners related to repairs, maintenance, and purchases are not unilaterally applied and generally are not required of corporate stores owned by Mid-Atlantic, Defendant Moore, or related entities.

110.     Such conduct is substantial evidence of the fact that these required repairs, maintenance, and purchases are arbitrary and without merit. Upon information and belief, they are intended to harass franchise owners and to drastically reduce their available capital in an effort to place the livelihoods of the franchise owners in permanent jeopardy.

111.     Furthermore, this scheme is intended to extract value for the Defendants at the expense of the Plaintiff and all similarly situated franchisees and to make it easier for the Defendants to engage in predatory and fraudulent conduct to regain control of profitable franchises without properly compensating franchisees.

112.     Under such conditions, Mid-Atlantic, Smithfield Management, Defendant Moore, and/or Defendant Harris are able to substantially control the day-to-day operations of all franchises and to force franchise owners to expend unnecessary resources that do not inure to the benefit of the franchise owners.

113.     In fact, such activity negatively affects franchise owners and renders the relationship between the franchisor and franchisee not unlike that of an employer and employee.

114.     Upon information and belief, beginning at some point after 2008, Mid-Atlantic,

Smithfield Management, Defendant Moore, and/or Defendant Harris began collecting illegal

rebates and kickbacks from food suppliers based on the food purchased by individual franchise

owners. Prior to this time, individual franchisees received the rebates on the food they purchased.

115.     Upon information and belief, Mid-Atlantic did not disclose this fact in offering circulars

nor did they disclose this fact to existing franchisees.

116.     Furthermore, upon information and belief, Mid-Atlantic intentionally refused to approve

food suppliers and other suppliers except those that paid rebates and kickbacks directly to Mid-

Atlantic, Smithfield Management, Defendant Moore, and/or Defendant Harris.

117.     As a result, franchisees have been forced to pay higher prices for supplies and have been

denied the opportunity to seek rebates from suppliers individually.

118.     In addition, upon information and belief, Mid-Atlantic has required franchisees to

purchase other supplies including, but not limited to, uniforms and other branded items from

entities affiliated with and/or owned by Mid-Atlantic, Smithfield Management, Defendant

Moore, and/or Defendant Harris.

119.     Upon information and belief, these affiliations have not been properly disclosed and have

resulted in franchisees paying higher prices for said supplies.

120.     This scheme, wherein Mid-Atlantic has required franchisees to purchase higher cost

supplies from affiliated suppliers and/or suppliers that provide kickbacks or incentives to Mid-

Atlantic, is an illegal tying arrangement resulting in substantial financial damage to the

franchisees and is designed to foreclose competition in the purchase of these supplies.

121.    Also, upon information and belief, Defendant Moore, Defendant Harris, and/or officers of Mid-Atlantic and Smithfield Management have been the subject of complaints and lawsuits that have not been properly disclosed. Likewise, upon information and belief, Defendant Moore, Defendant Harris, and/or officers of Mid-Atlantic and Smithfield Management have been involved in bankruptcy proceedings or related proceedings that have not been properly disclosed.

122.    Upon information and belief, Mid-Atlantic, Smithfield Management, Defendant Moore, and/or Defendant Harris have, for years, consistently engaged in a pattern of unscrupulous behavior to damage franchisees, foreclose competition and negatively affect commerce, all for their benefit.

123.    Upon information and belief, this pattern of activity was and is intended to deliberately subdue and marginalize franchisees such that they are powerless to addressing the fraud, deceit, and harassment being perpetrated against them.

124.    Further, upon information and belief, this illegal and fraudulent pattern of activity has been utilized to gain control over profitable franchises without properly compensating franchisees for the investment, time, and expense necessary to build or convert franchises to profitable endeavors.

125.    In fact, on May 23, 2015, as previously mentioned above, Defendant Harris kicked Plaintiff Musselwhite out of the Ogden store and terminated Plaintiff Whiteshire Foods' franchise agreement on May 26, 2015.

126.    Upon information and belief, Defendant Moore has previously seized the franchises owned by his own sister after the death of her former husband under the pretense that she refused to expend resources on making arbitrary and illegitimate repairs.

19

127.    Defendant Moore then proceeded to charge the estate of his sister's deceased former husband for these repairs and to finish the opening of a franchise that she and her former husband had already expended significant resources to construct. She was denied any interest in the completed franchise. The money in the estate would have otherwise been available to her and the children she shared with her former husband.

128.    Despite seizing these franchises without legitimate justification or provocation, Defendant Moore did not provide adequate or equitable compensation for the value of the property seized.

129.    Upon information and belief, by using these deceptive and bullying tactics to arbitrarily undermine franchise owners, Mid-Atlantic, Smithfield Management, S.C.N.B., INC, Cary Keisler, Inc., Defendant Moore, and/or Defendant Harris have benefited to the direct detriment of franchise owners.

130.    Similarly, upon information and belief, these deceptive and bullying tactics have allowed Mid-Atlantic, Smithfield Management, S.C.N.B., INC., Cary Keisler, Inc., Defendant Moore, and/or Defendant Harris to maintain substantial control over the day-to-day operations of franchises. This level of control is inconsistent with the expectations of the franchisor/franchisee relationship and is not conducted with good faith or fairness.

131.    Overall, Mid-Atlantic, Smithfield Management, S.C.N.B., INC., Cary Keisler, Inc., Defendant Moore, and/or Defendant Harris have engaged and continue to engage in a continued pattern of activity intended to maliciously damage and oppress franchise owners to the point that they are rendered incapable and/or fearful of properly defending their rights and interest.

132.    Furthermore, once these franchise owners have expended significant resources to build and develop successful franchises, Mid-Atlantic, Smithfield Management, S.C.N.B., INC., Cary

Keisler, Inc., Defendant Moore, and/or Defendant Harris engage in constant harassment and intimidation as well as make false claims and arbitrary demands, all in an effort to fraudulently seize franchise locations and/or coerce franchise owners to sell their franchises back to Mid-Atlantic, Smithfield Management, S.C.N.B., INC., Cary Keisler, Inc., Defendant Moore, and/or Defendant Harris at drastically depressed prices.

133.     Such action and/or the conspiracy to commit such action is in direct violation of dozens of common law and statutory provisions prohibiting, among other things, fraud, antitrust and anticompetitive activities, unfair and deceptive practices, and breach of fiduciary and contractual duties.

### V. Interrelationship of Defendants

134.     Upon information and belief, the Defendants Mid-Atlantic, Smithfield Management, Smithfield's of Smithfield, S.C.N.B., INC., Cary Keisler, Inc., and Smithfield's of Clayton are all corporations wholly or majority owned and operated by Defendant Moore and/or Defendant Harris and all control is retained by these two individuals as officers and owners.

135.     Upon information and belief, the Defendants have utilized a tangled web of corporate entities and affiliations to attempt to escape liability while perpetuating fraud and other unlawful conduct, such as that described herein. Consequently, equitable and other interests demand that these entities not be used to escape liability or shield the perpetrators of these actions.

136.     Specifically, upon information and belief, Defendant Moore and/or Defendant Harris utilizes these corporations and, potentially, dozens of other currently unnamed corporations and affiliations, as instrumentalities to effectuate the unlawful, fraudulent, and abusive actions alleged herein.

137.     Accordingly, Defendant Moore and Defendant Harris should be held jointly and severally

liable for the actions of these entities and/or the entities should be disregarded as mere

instruments or tools of Defendant Moore and/or Defendant Harris.

138.     In addition, or in the alternative, each and every Defendant named herein is an alter-ego

of each and every other Defendant named herein such that each Defendant should be held jointly

and severally liable for the actions of each and every Defendant.

139.     Pursuant to the aforementioned interrelationship of the Defendants, each and every claim

is asserted against each and every Defendant.

## CLAIMS FOR RELIEF

### *Plaintiff Musselwhite*

### COUNT I
### (Tortious Interference with Contract)

140.     The allegations contained in paragraphs 1-139 are re-alleged and incorporated herein by

reference.

141.     Plaintiff Musselwhite had a valid and enforceable contractual relationship with Defendant

Cheshire.

142.     Defendant were on notice of the contractual relationship between Plaintiff Musselwhite

and Defendant Cheshire.

143.     Defendant Mid-Atlantic, and/or other affiliated entities, Defendant Harris, induced

Defendant Cheshire to not perform the terms of the contract in efforts to further a conspiracy to

deprive Plaintiff Musselwhite of his economic interests.

144.     As a direct result of Defendant's unlawful conduct, Plaintiff Musselwhite was in fact

deprived of substantial economic interests.

22

145.     Defendant's conduct was done with knowledge of the contractual relationship and is without justification.

146.     As compensation for the above-noted injuries and losses, Plaintiff is entitled to recover compensatory damages from Defendant, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

147.     Furthermore, since Defendant engaged in the aforesaid conduct with malice, corruption, and in willful, wanton, and reckless disregard for the rights of Plaintiff Musselwhite, Plaintiff is entitled to an award of punitive damages against Defendant in an amount to be determined by the trier of fact.

*Plaintiff Musselwhite All Those Similarly Situated*

**COUNT II**
**(Breach of Contract)**

148.     The allegations of Paragraphs 1 through 147 of this Complaint are re-alleged and incorporated herein by reference.

149.     Valid contracts exist between the Defendants and Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc.,, and all those similarly situated, in the form of Franchise Agreements. In the case of Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., these agreements apply to the 7300 Market Street, Wilmington, North Carolina location.

150.     The Defendants have repeatedly and intentionally breached these contracts by engaging in conduct including, but not limited to, the following:

    a.  Demanding repairs and compliance with standards otherwise unknown to the franchisees;

23

b. Unreasonably and arbitrarily requiring the purchase of products, supplies, and other materials used in the franchise operations;

c. Imposing unreasonable, arbitrary, discriminatory, and/or retaliatory standards and performance requirements on franchisees;

d. Prohibiting the use of otherwise capable and competent suppliers in order to force franchisees to purchase from suppliers providing kick-backs, rebates, and other benefits to the Defendants; and

e. Harassing and intimidating franchisees through the abusive use of inspections, arbitrary changes in standards and procedure, threats of termination of franchise agreements and other unscrupulous practices.

151.    These actions have and continue to result in substantial expense and, upon information and belief, are part of a scheme designed to inflict financial damage on franchisees, weakening their ability to fight future attempts to illicitly seize their profitable franchises.

152.    Accordingly, as a result of the Defendants' breach, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc.,, and all those similarly situated, have suffered financial loss in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

153.    Furthermore, since Defendants engaged in the aforesaid conduct with malice, corruption, and in willful, wanton, and reckless disregard for the rights of Plaintiffs, Plaintiffs are entitled to an award of punitive damages against Defendants in an amount to be determined by the trier of fact.

## <u>COUNT III</u>
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

154.      The allegations of Paragraphs 1 through 153 of this Complaint are re-alleged and incorporated herein by reference.

155.      Valid contracts exist between the Defendants and Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, in the form of Franchise Agreements. In the case of Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., and Wilmington-17th Street, Inc., these agreements apply to the these agreements apply to the 7300 Market Street, Wilmington, North Carolina location.

156.      The Defendants have intentionally engaged in deceptive and abusive conduct related to the obligations under said contracts that directly contradict the understanding and expectations under said contracts.

157.      Specifically, the Defendants have repeatedly and intentionally undertaken actions inconsistent with the expectations of the parties including, but not limited to, the following:

      a. Demanding repairs and compliance with standards otherwise unknown to the franchisees;

      b. Unreasonably and arbitrarily requiring the purchase of products, supplies, and other materials used in the franchise operations;

      c. Imposing unreasonable, arbitrary, discriminatory, and/or retaliatory standards and performance requirements on franchisees;

      d. Prohibiting the use of otherwise capable and competent suppliers in order to force franchisees to purchase from suppliers providing kick-backs, rebates, and other benefits to the Defendants; and

25

e. Harassing and intimidating franchisees through the abusive use of inspections, arbitrary changes in standards and procedure, threats of termination of franchise agreements and other unscrupulous practices.

158. Accordingly, as a result of the Defendants' breach, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have suffered financial loss in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

159. Furthermore, since Defendants engaged in the aforesaid conduct with malice, corruption, and in willful, wanton, and reckless disregard for the rights of Plaintiffs, Plaintiffs are entitled to an award of punitive damages against Defendants in an amount to be determined by the trier of fact.

## COUNT IV
### (Breach of Fiduciary Duty)

160. The allegations of Paragraphs 1 through 159 of this Complaint are re-alleged and incorporated herein by reference.

161. The Defendants, as a franchisor, owed and continues to owe a fiduciary duty to the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, as franchisees.

162. Utilizing this position of trust and confidence, the Defendants have repeatedly made intentional misrepresentations to the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, regarding the standards and requirements for operating a franchise.

26

163.     Specifically, as described herein, the Defendants have made innumerable representations that certain repairs, purchases, or other actions were necessary to comply with franchise standards for performance and operations. The Defendants have also engaged in predatory and fraudulent activity intended to damage the interests of the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, while benefiting the interests of the Defendants as competitors.

164.     Acting as the franchisor, and utilizing threats and abusive practices, these misrepresentations were intended to deceive the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, and induce them to expend substantial resources, all in furtherance of the Defendants scheme to weaken franchisees and poach successful franchises for their own benefit. Likewise, these activities benefited the Defendants through the procurement of unfair and illegal competitive advantages for the corporate restaurants.

165.     Defendants' representations, made from the position of franchisor and laced with threats and intimidation, were reasonably calculated to deceive the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, such that they were induced to undertake the actions requested.

166.     Upon information and belief, these representations were proffered without reasonable care or regard for the written standards of performance and operations, the rights of franchisees pursuant to their franchise agreements, and the requirements imposed on Smithfield Chicken 'N Bar-B-Q restaurants controlled by the Defendants.

167.     The Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated justifiably relied on

these misrepresentations, as the franchisees had no reason to believe that the Defendants, as franchisors, would fail to exercise reasonable care in communicating the demands and taking the actions as described herein.

168.      Consequently, as clearly evidenced by the fact that restaurants controlled by the Defendants were not subject to the same level of standards and performance, the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, unnecessary expenditure of resources to comply with the misrepresentations was to their detriment.

169.      As a result of the Defendants' negligent misrepresentations, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have suffered financial loss in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

170.      Furthermore, since Defendants engaged in the aforesaid conduct with malice, corruption, and in willful, wanton, and reckless disregard for the rights of Plaintiffs, Plaintiffs are entitled to an award of punitive damages against Defendants in an amount to be determined by the trier of fact.

## COUNT V
### (Fraud)

171.      The allegations of Paragraphs 1 through 170 of this Complaint are re-alleged and incorporated herein by reference.

172.      The Defendants, as a franchisor, owed and continues to owe a duty of care to the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, as franchisees.

28

173.     Despite this duty of care, the Defendants have repeatedly made intentional misrepresentations to the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, regarding the standards and requirements for operating a franchise.

174.     Specifically, as described herein, the Defendants have made innumerable representations that certain repairs, purchases, or other actions were necessary to comply with franchise standards for performance and operations. The Defendants have also engaged in predatory and fraudulent activity intended to damage the interests of the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, while benefiting the interests of the Defendants as competitors.

175.     Acting as the franchisor, and utilizing threats and abusive practices, these misrepresentations were intended to deceive the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, and induce them to expend substantial resources, all in furtherance of the Defendants scheme to weaken franchisees and poach successful franchises for their own benefit. Likewise, these activities benefited the Defendants through the procurement of unfair and illegal competitive advantages for the corporate restaurants.

176.     Defendants' representations, made from the position of franchisor and laced with threats and intimidation, were reasonably calculated to deceive the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, such that they were induced to undertake the actions requested.

177.     Upon information and belief, these representations were proffered without reasonable care or regard for the written standards of performance and operations, the rights of franchisees

29

pursuant to their franchise agreements, and the requirements imposed on Smithfield Chicken 'N

Bar-B-Q restaurants controlled by the Defendants.

178.     The Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte –

Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated justifiably relied on

these misrepresentations, as the franchisees had no reason to believe that the Defendants, as

franchisors, would fail to exercise reasonable care in communicating the demands and taking the

actions as described herein.

179.     Consequently, as clearly evidenced by the fact that restaurants controlled by the

Defendants were not subject to the same level of standards and performance, the Plaintiffs

Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc.,

Wilmington-17th Street, Inc., and all those similarly situated, unnecessary expenditure of

resources to comply with the misrepresentations was to their detriment.

180.     As a result of the Defendants' negligent misrepresentations, Plaintiffs Musselwhite,

Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street,

Inc., and all those similarly situated, have suffered financial loss in an amount greater than

Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

181.     Furthermore, since Defendants engaged in the aforesaid conduct with malice, corruption,

and in willful, wanton, and reckless disregard for the rights of Plaintiffs, Plaintiffs are entitled to

an award of punitive damages against Defendants in an amount to be determined by the trier of

fact.

## COUNT VI
### (Constructive Fraud)

182.     The allegations of Paragraphs 1 through 181 of this Complaint are re-alleged and

incorporated herein by reference.

30

183.     The Defendants, as a franchisor, owed and continues to owe a fiduciary duty to the

Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc.,

Wilmington-17th Street, Inc., and all those similarly situated, as franchisees.

184.     Utilizing this position of confidence and trust, the Defendants have repeatedly made

intentional misrepresentations to the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy

17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated,

regarding the standards and requirements for operating a franchise.

185.     Specifically, as described herein, the Defendants have made innumerable representations

that certain repairs, purchases, or other actions were necessary to comply with franchise

standards for performance and operations. The Defendants have also engaged in predatory and

fraudulent activity intended to damage the interests of the Plaintiffs Musselwhite, Whiteshire

Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all

those similarly situated, while benefiting the interests of the Defendants as competitors.

186.     Acting as the franchisor, and utilizing threats and abusive practices, these

misrepresentations were intended to deceive the Plaintiffs Musselwhite, Whiteshire Foods, Inc.,

Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those

similarly situated, and induce them to expend substantial resources, all in furtherance of the

Defendants scheme to weaken franchisees and poach successful franchises for their own benefit.

Likewise, these activities benefited the Defendants through the procurement of unfair and illegal

competitive advantages for the corporate restaurants.

187.     Defendants' representations, made from the position of franchisor and laced with threats

and intimidation, were reasonably calculated to deceive the Plaintiffs Musselwhite, Whiteshire

Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, such that they were induced to undertake the actions requested.

188.     Upon information and belief, these representations were proffered without reasonable care or regard for the written standards of performance and operations, the rights of franchisees pursuant to their franchise agreements, and the requirements imposed on Smithfield Chicken 'N Bar-B-Q restaurants controlled by the Defendants.

189.     The Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated justifiably relied on these misrepresentations, as the franchisees had no reason to believe that the Defendants, as franchisors, would fail to exercise reasonable care in communicating the demands and taking the actions as described herein.

190.     Consequently, as clearly evidenced by the fact that restaurants controlled by the Defendants were not subject to the same level of standards and performance, the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, unnecessary expenditure of resources to comply with the misrepresentations was to their detriment.

191.     As a result of the Defendants' misrepresentations, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have suffered financial loss in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

192.     Furthermore, since Defendants engaged in the aforesaid conduct with malice, corruption, and in willful, wanton, and reckless disregard for the rights of Plaintiffs, Plaintiffs are entitled to

an award of punitive damages against Defendants in an amount to be determined by the trier of fact.

## COUNT VII

### (Unjust Enrichment)

193.    The allegations of Paragraphs 1 through 192 of this Complaint are re-alleged and incorporated herein by reference.

194.    Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated have conferred a benefit on the Defendants by virtue of the Defendants inducement to perform repeated unnecessary expenditures on their franchises, thereby raising the value of the franchises at the franchisees expense.

195.    This benefit was forcefully and fraudulently obtained through the use of threats, deceit, and other impermissible inducements.

196.    Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, conferred this benefit against their will on the basis of the forceful and fraudulent inducement.

197.    The value of this benefit is measurable, markedly increasing the value of the franchises in the hands of the Defendants, all at the expense of the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated.

198.    The Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have not received any of the value of this benefit as they have expended their own resources to achieve the gain in

33

value of the franchise. Often, the expended resources vastly exceed the relevant increase in the value of the franchise.

199.     As detailed herein, the Defendants have undertaken a scheme to force franchisees to invest heavily in their franchises to make them valuable and profitable. If and when this succeeds, the Defendants undertake a pattern of activity designed to regain control of the franchise without properly compensating the franchisees for their investment and earned goodwill. Accordingly, the Defendants are unjustly enriched.

200.     Based on this unlawful scheme and pattern of activity, the Defendants not only consciously accepted this benefit but actively and intentionally sought it, all at the expense of the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated.

201.     As a result of the Defendants' unjust enrichment, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have suffered financial loss in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).  .

202.     Furthermore, since Defendants engaged in the aforesaid conduct with malice, corruption, and in willful, wanton, and reckless disregard for the rights of Plaintiffs, Plaintiffs are entitled to an award of punitive damages against Defendants in an amount to be determined by the trier of fact.

34

## COUNT VIII
### (Negligent Misrepresentation)

203.     The allegations of Paragraphs 1 through 202 of this Complaint are re-alleged and

incorporated herein by reference.

204.     The Defendants, as a franchisor, owed and continues to owe a duty of care to the

Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc.,

Wilmington-17th Street, Inc., and all those similarly situated, as franchisees.

205.     Despite this duty of care, the Defendants have repeatedly made misrepresentations to the

Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc.,

Wilmington-17th Street, Inc., and all those similarly situated, regarding the standards and

requirements for operating a franchise.

206.     Specifically, as described herein, the Defendants have made innumerable representations

that certain repairs, purchases, or other actions were necessary to comply with franchise

standards for performance and operations. The Defendants have also engaged in predatory and

fraudulent activity intended to damage the interests of the Plaintiffs Musselwhite, Whiteshire

Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all

those similarly situated, while benefiting the interests of the Defendants as competitors.

207.      Upon information and belief, these representations were proffered without reasonable

care or regard for the written standards of performance and operations, the rights of franchisees

pursuant to their franchise agreements, and the requirements imposed on Smithfield Chicken 'N

Bar-B-Q restaurants controlled by the Defendants.

208.     The Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte –

Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated justifiably relied on

these misrepresentations, as the franchisees had no reason to believe that the Defendants, as

35

franchisors, would fail to exercise reasonable care in communicating the demands and taking the actions as described herein.

209.     Consequently, as clearly evidenced by the fact that restaurants controlled by the Defendants were not subject to the same level of standards and performance, the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, unnecessary expenditure of resources to comply with the misrepresentations was to their detriment.

210.     As a result of the Defendants' negligent misrepresentations, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have suffered financial loss in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

211.     Furthermore, since Defendants engaged in the aforesaid conduct with malice, corruption, and in willful, wanton, and reckless disregard for the rights of Plaintiffs, Plaintiffs are entitled to an award of punitive damages against Defendants in an amount to be determined by the trier of fact.


### COUNT IX
### (Unfair and Deceptive Trade Practices [Violation of N.C.G.S. §75-1.1, *et seq.*])

212.     The allegations of Paragraphs 1 through 211 of this Complaint are re-alleged and incorporated herein by reference.

213.     The Defendants and the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, are engaged in commerce as defined by  N.C.G.S. § 75-1.1 *et seq.*

36

214.     The Defendants have and continue to engage in unfair and deceptive trade practices by deceivingly inducing the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, to undertake significant expense to meet standards of performance and operations not required by the restaurants owned by the Defendants.

215.     The Defendants also continue to engage in a pattern of activity designed to fraudulently induce the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, to invest time and resources in their franchises with the intent that the Defendants will eventually retake the franchises under false pretenses and without proper compensation to the franchisees.

216.     The Defendants have further engaged in unfair and deceptive trade practices by requiring the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, to purchase products and supplies from entities that are intimately connected or controlled by the Defendants such that the Defendants are engaging in anticompetitive activity and directly profiting from exclusive purchasing arrangements.

217.     Because these acts are in and affecting commerce; have the capacity to deceive an ordinary consumer; actually deceived the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated; are willful, corrupt, immoral, and oppressive; and constitute unfair and deceptive trade practices under N.C.G.S. §75-1.1, the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly

37

situated, are thereby entitled to treble damages plus reasonable attorney fees pursuant to

N.C.G.S. §§75-16 and 75-16.1.

218.       As a result of the Defendants' unfair and deceptive trade practices, Plaintiffs

Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc.,

Wilmington-17th Street, Inc., and all those similarly situated, have suffered financial loss in an

amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

## COUNT X
### (Violation of North Carolina Civil RICO [Violation of N.C.G.S. §75D-1, *et seq.*])

219.       The allegations of Paragraphs 1 through 218 of this Complaint are re-alleged and

incorporated herein by reference.

220.       The Defendants, through a pattern of organized and unlawful racketeering conduct as

more fully described herein, have extracted a pecuniary gain to the detriment of the Plaintiffs

Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc.,

Wilmington-17th Street, Inc., and all those similarly situated.

221.       Specifically, the Defendants have engaged in multiple acts, as detailed throughout this

Complaint, that violate North Carolina criminal statutes, including N.C.G.S. §14-100 (Obtaining

Property by False Pretenses) and N.C.G.S. §14-118.4 (Extortion).

222.       These criminal acts are part of a pattern of racketeering activity designed to induce the

Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc.,

Wilmington-17th Street, Inc., and all those similarly situated, to undertake significant expense to

meet standards of performance and operations not required by the restaurants owned by the

Defendants and to invest time and resources in their franchises with the intent that the

38

Defendants will eventually retake the franchises under false pretenses and without proper compensation to the franchisees.

223.      Furthermore, these criminal acts are part of an unlawful scheme to require the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, to purchase products and supplies from entities that are intimately connected or controlled by the Defendants such that the Defendants are engaging in anticompetitive activity and directly profiting from exclusive purchasing arrangements. The Defendants effectuate these purchasing arrangements through the use of threats, including threats that the Defendants would seize the franchises of the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated.

224.      Meanwhile, the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have continued to meet their respective obligations and operate their franchises in compliance with all relevant laws and expectations.

225.      Accordingly, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, seek all available remedies as permitted by N.C.G.S. §75D-8, including a recovery of threefold the damages they have sustained and the costs of this suit, which include attorney's fees.

39

## COUNT XI
### (Violation of Sherman Antitrust Act [15 U.S.C. §1, *et seq.*] and the Clayton Act [15 U.S.C. §12, *et seq.*])

226.     The allegations of Paragraphs 1 through 225 of this Complaint are re-alleged and incorporated herein by reference.

227.     Upon information and belief, the Defendants are an enterprise or enterprises engaged in and whose activities affect interstate commerce.

228.     The Defendants, collectively as the franchisor, directly compete with the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, as franchisees.

229.     The actions taken by the Defendants, as the franchisors, in coercing the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated of products, as franchises, to set specific prices is a per se violation of Section 1 of the Sherman Antitrust Act.

230.     Specifically, the Defendants have used corporate restaurants to set pricing policies and engaged in harassing and otherwise coercive conduct, as more fully described herein, to force franchisees to parallel corporate retail pricing, offer compulsory bargains and deals, and accept other price-setting devices.

231.     Furthermore, the Defendants, their affiliates, related parties, and co-conspirators have created several "tying arrangements" wherein the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, as franchisees, are required to purchase supplies and products from certain suppliers, including the Defendants. These arrangements are per se violations of Section 1 of the Sherman Antitrust Act.

232.     Specifically, the Defendants require the franchisees to purchase promotional materials, including uniforms, from an entity that is, upon information and belief, wholly owned by Defendant Moore and/or Defendant Harris. These purchases must be made at above-market prices and may not be substituted with comparable products from outside competitors.

233.     Upon information and belief, because these exclusive purchasing arrangements were not disclosed at the time franchisees signed their franchise agreements and because it was not reasonably anticipated that any such arrangements would be imposed, these arrangements have created a "lock-in" effect whereby the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, as franchisees, must abide by the exclusive purchasing arrangements or lose their franchises.

234.     Similarly, the Defendants have not permitted the franchisees to purchase food and related supplies from vendors outside of those that pay kickbacks and incentives to the Defendants directly. This is true despite the existence of reasonably comparable products available at lower prices from outside competitors.

235.     Accordingly, the Defendants, their affiliates, related parties, and co-conspirators have created a per se illegal tying arrangement wherein the exercise of the Defendants' significant economic power in controlling the use of the franchise trademarks and related assets has substantially impaired the competition for the tying products, including the uniforms, promotional materials, food supplies and related products.

236.     Upon information and belief, the agreement between the Defendants and their affiliates, related parties, and co-conspirators are conditioned upon the Defendants prohibiting the franchisees from purchasing products and supplies from competitors such that competition is

substantially limited in those products or supplies. Upon information and belief, such an arrangement would be a violation of Section 3 of the Clayton Act.

237.        In addition to the aforementioned conduct, the Defendants, as competitors to the franchisees, have engaged in a pattern of predatory activity designed to monopolize all franchises and restrain competition with franchisees. This scheme, as described in detail herein, is antitrust activity directly in violation of Section 2 of the Sherman Antitrust Act.

238.        Based on the aforementioned antitrust activity, the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, as franchisees, have been substantially damaged in their businesses.

239.        Accordingly, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, seek all available remedies as permitted by 15 U.S.C. §15(a), including a recovery of threefold the damages they have sustained and the costs of this suit, which include attorney's fees.

## COUNT XII
### (Violation of Federal Civil RICO [18 U.S.C. §1962(c) and (d)])

240.        The allegations of Paragraphs 1 through 239 of this Complaint are re-alleged and incorporated herein by reference.

241.        Upon information and belief, the Defendants Mid-Atlantic and Smithfield Management are an enterprise or enterprises engaged in and whose activities affect interstate commerce.

242.        Upon information and belief, the Defendants did conduct and participate or conspire to conduct and participate, either directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, all in violation of 18 U.S.C. 1962(c) and/or (d).

243.        Upon information and belief, Defendants committed multiple related acts of wire fraud, mail fraud, and other predicate acts enumerated in 18 U.S.C. §§1961(1)(A) and (B) pursuant to

42

and in furtherance of their scheme to defraud and destroy the economic interests of the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated. Said acts are described, in detail, throughout this Complaint.

244.     The acts set forth throughout constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

245.     Defendants, individually and collectively, have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described herein, in violation of 18 U.S.C. §1962(c).

246.     As a direct and proximate cause of Defendants racketeering activities and violations of 18 U.S.C. § 1962(c), the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have been injured in their business and property.

247.     Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have suffered significant damage to their financial and economic interests by virtue of the aforementioned conduct perpetrated by the Defendants.

248.     Accordingly, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, seek all available remedies as permitted by 18 U.S.C. §1964(c), including a recovery of threefold the damages they have sustained and the costs of this suit, which include attorney's fees.

43

## COUNT XIII

### (Civil Conspiracy)

249.     The allegations of Paragraphs 1 through 248 of this Complaint are re-alleged and incorporated herein by reference.

250.     As described fully herein, the Defendants have jointly agreed to engage in an unlawful scheme to defraud, harass, and otherwise damage the interests of the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated.

251.     Similarly, the Defendants have jointly agreed to engage in a scheme designed to substantially restrict competition and monopolize their respective market, all to the detriment of the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated.

252.     Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have suffered significant damage to their financial and economic interests by virtue of the aforementioned conduct perpetrated by the Defendants.

253.     As a result of the Defendants' conspiracy to engage in these unlawful schemes, the Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have suffered financial loss in an amount greater than Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

254.     Furthermore, since Defendants engaged in the aforesaid conduct with malice, corruption, and in willful, wanton, and reckless disregard for the rights of Plaintiffs, Plaintiffs are entitled to an award of punitive damages against Defendants in an amount to be determined by the trier of fact.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs respectfully pray that:

1. As to Count I of this Complaint, Plaintiff Musselwhite have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

2. As to Count II of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

3. As to Count III of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

4. As to Count IV of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

5. As to Count V of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

6. As to Count VI of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated,

have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

7. As to Count VII of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

8. As to Count VIII of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

9. As to Count IX of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

10. As to Count X of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

11. As to Count XI of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

12. As to Count XII of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

13. As to Count XIII of this Complaint, Plaintiffs Musselwhite, Whiteshire Foods, Inc., Leland-Hwy 17, Inc., Shallotte – Hwy 17, Inc., Wilmington-17th Street, Inc., and all those similarly situated, have and recover of the Defendants compensatory and punitive damages in an amount in excess of $25,000.00.

This the 23rd day of May 2018.

**HAIRSTON LANE**

**/s/ Donald G. Huggins Jr.**
Donald G. Huggins Jr.
N.C. Bar No.: 47819
dhuggins@hairstonlane.com

James E. Hairston, Jr.
N.C. Bar No.: 19687
jhairston@haristonlane.com

Post Office Box 710
Raleigh, North Carolina 27602
(919) 838-5295 Telephone
(888) 510-1160 Facsimile

47