UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-89-BO

| | | |
|---|---|---|
| MICHAEL MUSSELWHITE; WHITESHIRE FOODS, INC.; LELAND-HWY 17, INC.; SHALLOTTE-HWY 17, INC.; WILMINGTON-HWY 17, INC.; and ALL THOSE SIMILARLY SITUATED; | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| MID-ATLANTIC RESTAURANT CORPORATION; CARY KEISLER, INC.; S.C.N.B., INC.; and DAVID HARRIS, in his Individual and official capacity as an officer of Mid-Atlantic Restaurant Corporation and Smithfield Management Corporation; | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the Court on defendants' motions to dismiss [DE 26, 28, 31, 33] and plaintiffs' motion for an extension of time to respond to the motions to dismiss [DE 36]. These motions have all been fully briefed and are ripe for disposition. For the following reasons, plaintiffs' motion for an extension of time [DE 36] is GRANTED for good cause shown, defendants' second motions to dismiss [DE 31, 33] are GRANTED, and defendants' first motions to dismiss [DE 26, 28] are DENIED AS MOOT.

BACKGROUND

Between 2000 and 2014, plaintiff Michael Musselwhite and a business partner, Mr. Cheshire, purchased four Smithfield's Chicken 'n Bar-B-Q restaurants in the Wilmington, North Carolina area. These purchases were made through a variety of corporate entities formed by plaintiff Musselwhite: Whiteshire Foods, Inc. ("Whiteshire"); Leland-Hwy 17, Inc. ("Leland");

Shallotte-Hwy 17, Inc. ("Shallotte"); and Wilmington-17th Street, Inc. ("Wilmington"). For each of these four Smithfield's restaurants, plaintiffs entered into franchise agreements with defendant Mid-Atlantic Restaurant Corporation ("MARC").

In 2015, plaintiffs transferred the Leland and Shallotte franchises to another individual in exchange for valuable consideration. Plaintiffs owned the land on which the restaurants stood, and transferred the franchise rights in exchange for seven years of rent payments "culminating with a substantial buyout" at the conclusion of the rental agreement. [DE 30, ¶¶ 50–55]. The termination agreements included a broad mutual release, in which the parties "forever release[d] and discharge[d]" one another "from any and all claims, damages, demands, debts, causes of action, suits," and so on as of the date of the agreements: February 27, 2015. [DE 32-5, p. 2]. At the same time, plaintiffs transferred the Whiteshire and Wilmington franchises to defendant Cary Keisler, Inc. "or another affiliated entity" in exchange for rent. [DE 30, ¶¶ 56–59]. Again, plaintiffs signed a similar release, which was executed on the same date: February 27, 2015. [DE 32-7, p. 5].

The crux of the dispute arises over whether plaintiff Musselwhite was entitled to have an ownership interest in the properties. Plaintiff Musselwhite alleges, effectively, that he was bullied, harassed, and deceived by defendant Harris into selling his ownership interest in the franchises to his business partner, Mr. Cheshire, for $375,000.

In January 2016, plaintiff Musselwhite filed suit against Mr. Cheshire in state court in North Carolina, alleging that he was fraudulently induced into assigning his ownership interest and bringing related claims of fraud, breach of contract, and unfair and deceptive trade practices. The state court entered a directed verdict for Mr. Cheshire, finding that plaintiff Musselwhite had not been deprived of "any meaningful choice" in assigning his interests. [DE 34-19]. Further, the state court determined that plaintiff Musselwhite's continued acceptance of payments toward the

$375,000 purchase price even after he discovered that he had not been required to divest himself of ownership interest in the franchises effectively ratified the disputed transaction. *Id.*

In May 2018, plaintiffs filed the instant suit in federal court. [DE 1]. They bring thirteen claims of tortious interference, breach of contract, breach of fiduciary duty, fraud, unjust enrichment, negligent misrepresentation, unfair and deceptive trade practices, antitrust violations, and civil conspiracy. [DE 30]. After defendants' first moved to dismiss the claims in August, plaintiffs filed an amended complaint dismissing their claims as to some defendants but otherwise preserving their initial complaint. *Id.* Defendants again moved to dismiss in September under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## DISCUSSION

This matter is, fundamentally, a contract dispute between the franchisee plaintiffs and franchisor defendant, Mid-Atlantic Restaurant Corporation. Defendants make a number of arguments in support of their motion to dismiss; principally, they argue that many of plaintiffs' claims are barred by the release language in the termination agreements signed in February 2015 and that the remaining claims are precluded. At the outset, the Court finds good cause for plaintiffs' motion for an extension of time to respond to defendants' second motions to dismiss, and has considered plaintiffs' response in opposition.

When considering a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," as merely reciting the elements of a cause of action

with the support of conclusory statements does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In considering a Rule 12(b)(6) motion to dismiss, courts "may consider documents that are referenced in and central to the complaint, and the authenticity of which neither party questions." *Haberland v. Bulkeley*, 896 F. Supp. 2d 410, 419 (E.D.N.C. 2012) (citations omitted). These documents may be considered "even if they are not attached to or incorporated by reference in the complaint." *Id.* Courts "need not accept as true a plaintiff's factual allegations to the extent they contradict such documents." *Id.* Defendants filed the four franchise agreements that plaintiffs made with defendant MARC. [DE 28-1, 28-2, 28-3, 28-4]. All four franchise agreements are central to the plaintiffs' claims, and plaintiffs' amended complaint repeatedly makes reference to the agreements. [*See, e.g.*, DE 30, ¶¶ 37, 81]. Further, at the Rule 12(b)(6) stage, a court may consider "matters of which a court may take judicial notice." *Haberland*, 896 F. Supp. at 419 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Federal courts may take judicial notice of "the content of court records," including state court records. Fed. R. Evid. 201(b)(2); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989). All four franchise agreements were trial exhibits in a related state action brought by plaintiff Musselwhite, New Hanover Superior Court File No. 16-CVS-301, so the Court may take judicial notice of them. The same is true of the termination agreements made by plaintiffs.

The Court finds that all of plaintiffs' claims that are premised on actions that occurred prior to February 27, 2015 are barred by the release language in the termination agreements. North Carolina law provides that "a party who signs a general release discharges all claims it had against

4

the party it released." *Hardee's Food Sys., Inc. v. Oreel*, 32 F. Supp. 2d 342 (E.D.N.C. 1998) (citing *Spivey v. Lowery*, 116 N.C. App. 124 (1994)). When a complaint alleges facts "showing that the claim is barred by a settlement agreement or release, the claim is subject to dismissal under Rule 12(b)(6)." *Assurance Group, Inc. v. Bare*, 245 N.C. App. 566 (2016).

The release documents signed by plaintiffs Musselwhite, Whiteshire, Leland, Shallotte, and Wilmington all operate to discharge the claims those plaintiffs had against defendant MARC, its "affiliated entities" (this includes defendants Cary Keisler, Inc. and S.C.N.B., Inc.), and all of its "officers, directors, owners" and so on. [DE 32-5]. The plaintiffs entered into these agreements freely and in exchange for valuable consideration. Plaintiffs do not specifically allege fraud in connection with the execution of these releases; regardless, as the state court previously determined, the agreements and the releases they contain have been ratified by plaintiffs' continued acceptance of the benefits of the bargains. *See Presnell v. Liner*, 218 N.C. 152, 154 (1940). Thus, any of plaintiffs' claims which arose prior to February 27, 2015 are barred by the release language in the termination agreements, and must be dismissed.

To the extent that some of plaintiffs' claims arise after February 27, 2015, these claims must also be dismissed. Defendants assert non-mutual collateral estoppel, arguing that the state court in plaintiff Musselwhite's prior proceedings has previously and necessarily decided the claims at issue. First, any claims that survive the termination agreements must arise prior to May 29, 2015, as plaintiff Musselwhite terminated his remaining agreements with Mr. Cheshire at that time. Thus, it is the window of time between February 27, 2015 and May 29, 2015 that is directly at issue, and it was the conduct in this period that was central to the state court litigation.

Collateral estoppel "precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted

5

enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995). "Res judicata and collateral estoppel are analyzed under Rule 12(b)(6) as a failure to state a claim on which relief may be granted." *Yelverton v. Yelverton Farms, Ltd.*, 2015 WL 847393, at *8 (E.D.N.C. Feb. 26, 2015), *aff'd*, 623 F. App'x 72 (4th Cir. 2015) (citing *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 720 (4th Cir. 2006)). A district court may properly "take judicial notice of facts from a prior judicial proceeding when the [collateral estoppel] defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n. 1 (4th Cir. 2000).

North Carolina also permits non-mutual collateral estoppel, provided that its application is fair to the party against whom the defense is asserted. *See Tar Landing Villas Owners' Ass'n v. Town of Atl. Beach*, 64 N.C. App. 239, 243–44 (1983), *disc. rev. denied*, 310 N.C. 156 (1984) (finding that parties who were not part of the prior litigation could use those proceedings offensively against parties that were part of the prior litigation). This is true "regardless of whether the issue involves questions of fact or law." *Tar Landing*, 64 N.C. App. at 244. Non-mutual collateral estoppel is applicable where "a party who has previously had a full and fair opportunity to litigate a matter now seeks to reopen the identical issues with a new adversary." *Thomas M. McInnis & Assocs., Inc. v. Hall*, 318 N.C. 421, 434–35 (1986). "Whether an issue raised in the pleading was actually litigated and determined must be determined by a review of the entire record." *Thomas M. McInnis*, 318 N.C. at 439 (citing *Reid v. Holden*, 242 N.C. 408 (1955)).

The Court is satisfied that the record of the state court litigation establishes that plaintiff Musselwhite's claims for tortious interference and civil conspiracy—claims only he brought, not the other plaintiffs, and the only claims which arose between February 27, 2015 and May 29, 2015—were fully and fairly litigated. The court considered plaintiff Musselwhite's claims that his

contractual rights had been interfered with and defendant Harris and his affiliates had conspired to remove him. The court also considered whether plaintiff Musselwhite had waived his rights to assert these claims, given that he had continued to accept the benefits of the disputed transaction. Ultimately, the state court found plaintiff Musselwhite's evidence insufficient and rejected his claims. The state court concluded that plaintiff Musselwhite had not been deprived of "any meaningful choice" in executing the agreements which assigned his interests to Mr. Cheshire, and further concluded that even if Mr. Cheshire or defendant Harris had acted wrongfully, plaintiff Musselwhite's continued acceptance of payments ratified the agreements. [DE 34-19].

Thus, plaintiff Musselwhite is collaterally estopped from bringing claims of tortious interference and civil conspiracy against defendant Harris, and these claims must be dismissed. As these claims are the only ones plaintiffs bring which arose after February 27, 2015 and prior to May 29, 2015, plaintiffs' amended complaint must be dismissed.

## CONCLUSION

For the reasons discussed above, plaintiffs' motion for an extension of time [DE 36] is GRANTED for good cause shown, defendants' second motions to dismiss [DE 31, 33] are GRANTED, and defendants' first motions to dismiss [DE 26, 28] are DENIED AS MOOT. The Clerk is DIRECTED to close the case.

SO ORDERED, this _28_ day of October, 2018.

_____
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE

7