UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-89-BO

| | |
|---|---|
| MICHAEL MUSSELWHITE; WHITESHIRE FOODS, INC.; and WILMINGTON-17TH STREET, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MID-ATLANTIC RESTAURANT CORPORATION; CARY KEISLER, INC.; and S.C.N.B., INC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) **O R D E R** ) ) ) ) ) ) |

This matter comes before the Court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have responded, defendants have replied, and a hearing on the matter was held before the undersigned on February 23, 2022, at Raleigh, North Carolina. In this posture, the matter is ripe for ruling. For the reasons that follow, defendants' motion is granted in part and denied in part.

## BACKGROUND

The Court incorporates by reference as if fully set forth herein the background of this matter set out in its prior order dismissing plaintiffs' amended complaint. [DE 40]. The court of appeals subsequently vacated this Court's dismissal, remanding the four claims on which plaintiff proceeded in the appeal: tortious interference with contract, breach of contract, breach of the covenant of good faith and fair dealing, and unfair and deceptive trade practices under North Carolina law. *See Musselwhite v. Mid-Atl. Rest. Corp.*, 809 F. App'x 122 (4th Cir. 2020).

The following factual background is derived from the undisputed facts submitted by the parties [DE 76 & 82] unless otherwise indicated.

In early 2000, plaintiff Musselwhite and Brian Cheshire formed Flamingo Properties to purchase the land at 7300 Market Street in Wilmington and formed plaintiff Whiteshire Foods to operate a Smithfield's Chicken 'N Bar-B-Q (Smithfield's) restaurant at that location. Whiteshire entered into a franchise agreement with defendant Mid-Atlantic Restaurant Corporation (MARC) to operate the Market Street franchise. In October 2003, Musselwhite and Cheshire purchased another Smithfield's franchise at 3705 Patriot Way in Wilmington and created plaintiff Seventeenth Street to operate that franchise under an agreement with MARC. Whiteshire and Seventeenth Street rented the physical space for the Smithfield's restaurants from Flamingo Properties.

In early 2015, MARC and plaintiffs entered into amended franchise agreements effective February 27, 2015. Pursuant to those agreements, plaintiffs agreed to rebuild the Seventeenth Street restaurant beginning in January 2016 so that it could reopen for business under MARC's ownership by June 15, 2016. Plaintiffs also agreed to rebuild the Whiteshire restaurant beginning in January 2017 so that it be reopened by MARC by June 15, 2017. MARC agreed that once it took control of the restaurants it would rent the physical space from Flamingo under a seven-year lease. The parties subsequently orally amended the agreement to permit MARC to take over the franchises on August 1, 2015.

On January 27, 2015, MARC conducted an inspection of the Whiteshire restaurant. Musselwhite was subsequently informed by David Harris, MARC's chief operating officer, that the inspection revealed problems. Harris identified operational issues which he characterized as a threat to the Smithfield's brand and in some cases a threat to public health and safety. Harris also informed Musselwhite that MARC was preparing formal notices of default due to substandard operations. Harris met with Musselwhite and Cheshire on February 2, 2015, to discuss his concerns

with the restaurants, in particular his concern that Musselwhite was not spending enough time at the franchises and not meeting MARC's standards. Following the meeting, Harris sent Musselwhite an email attaching thirteen photographs of alleged violations of MARC's standards. In his deposition, Musselwhite admitted that in the months preceding the termination of the franchise agreements he had received noticed about problems with his restaurants from MARC, and Musselwhite admitted that at least some of the complaints were "possibly" legitimate. However, Musselwhite disputes MARC's characterization of some of the violations it has identified. Musselwhite has also stated that he was afraid to question the complaints he received from MARC.

After the inspections, Harris met with Musselwhite at the Whiteshire restaurant and told him that MARC would be terminating the franchises based on Musselwhite's continued neglect and failure to operate the restaurants in a safe and sanitary manner. On May 26, 2015, MARC sent Musselwhite a letter terminating the Whiteshire and Seventeenth Street franchises effective immediately. The letter detailed sanitation and safety violations and cited to Section XVII.B.10 and Section XVII.B.12 of the franchise agreement; these sections authorize the franchisor to terminate the agreement if the franchisee "[c]ontinues to violate any health , safety or sanitation law, ordinance or regulation or operates the [restaurant] in a manner that presents a health or safety hazard to its customers or the public" and if the franchisee "[m]aterially misuses or makes an unauthorized use of any Marks or commits any act which can reasonably be expected to materially impair the goodwill associated with any Marks." [DE 76 ¶¶ 34, 35].

Musselwhite contends that on May 21, 2015, Cheshire indicated to him that Harris had insisted that Musselwhite have no ownership interest in the Flamingo Properties if MARC was going to continue to operate restaurants on the Whiteshire and Seventeenth Street properties,

3

however no one from MARC had told him that he could not remain an owner of Flamingo Properties. Musselwhite contends that Cheshire convinced him to divest his interest in Flamingo Properties "on paper" warning that, if Musselwhite did not, MARC would not operate the restaurants and Musselwhite and Cheshire would get nothing. On May 29, 2015, Musselwhite transferred his 50% interest in Flamingo Properties and Flamingo South to Cheshire for $375,000.00.

Musselwhite contends that he accepted the $375,000 buy-out voluntarily because he trusted Cheshire and Cheshire had indicated that he would resume his business relationship with Musselwhite after things calmed down and pay Musselwhite what he was due under the franchise agreements. After the buy-out, Cheshire ended his business relationship with Musselwhite.

Plaintiff does not dispute that he does not have specific evidence of inequitable treatment by MARC of its franchisees. As to damages, plaintiffs contend that defendants have the relevant agreements and amendments necessary to calculate damages in this case.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "A dispute is genuine if a reasonable jury could return a verdict

4

for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

At the outset, the Court agrees with plaintiffs that the second Harris affidavit is not a sham and can properly be considered in resolving the motion for summary judgment. The Court further ALLOWS plaintiffs' motion to file a surreply to respond to defendants' sham affidavit arguments. [DE 88].

A. Tortious Interference with Contract.

Defendants are entitled to summary judgment in their favor on plaintiffs' tortious interference with contract claim. Plaintiff's theory on this claim is that defendants without justification convinced Cheshire to sever his partnership with Musselwhite in the Flamingo real estate entities. To succeed on a claim for tortious interference with contract, a plaintiff must demonstrate:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Beck v. City of Durham*, 154 N.C. App. 221, 232 (2002). Plaintiffs' claim fails because, even if Musselwhite could establish the remaining elements of the claim, Musselwhite cannot establish any breach by Cheshire. The undisputed evidence is that Musselwhite accepted a payment of $375,000 from Cheshire in exchange for Musselwhite's 50% interest in the Flamingo entities. As Musselwhite accepted the payment voluntarily, there is no evidence that Cheshire did not perform

5

Case 7:18-cv-00089-BO   Document 93   Filed 02/25/22   Page 5 of 6

or breached his agreement with Musselwhite. Accordingly, defendants are entitled to summary judgment as to this claim.

B.   Breach of Contract, Breach of the Implied Duty of Good Faith and Fair Dealing, and Unfair and Deceptive Trade Practices.

The Court has considered the record and the arguments of the parties and concludes that plaintiffs have sufficiently rebutted defendants' motion for summary judgment as to these remaining claims. The motion for summary judgment as to these claims is therefore DENIED. The matter will be referred to the appropriate United States Magistrate Judge to conduct a pretrial conference.

C.   Defendant S.C.N.B.

Plaintiffs do not contest dismissal of this defendant from this action. Defendant S.C.N.B. is therefore DISMISSED.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants motion for summary judgment [DE 74] is GRANTED IN PART and DENIED IN PART. Defendant S.C.N.B. is DISMISSED. The motion to file a sur-reply [DE 88] is ALLOWED. The clerk is DIRECTED to refer the matter for pretrial conference on the remaining claims.

SO ORDERED, this 24 day of February, 2022.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

6

Case 7:18-cv-00089-BO   Document 93   Filed 02/25/22   Page 6 of 6